AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Pete OJEDA<br>Aparicio LIZARDY Avila<br><br>Defendant(s) | Case No.<br>SA: 15-MJ-988 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **December 2, 2015** in the county of **Bexar** in the **Western** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 841(a)(1)(b)(1)(A) | Knowingly, intentionally, willfully and unlawfully possess, with intent to distribute a controlled substance listed under Schedule I, TItle II of the Controlled Substances Act, to wit: 500 grams or more of a mixture of a substance containing heroin.<br><br>PENALTIES:  5-40 years imprisonment, $5 million dollar fine, minimum five years supervised release and a $100.00 Special Assessment Fee |

This criminal complaint is based on these facts:

See attached Affidavit made part hereof.

☑ Continued on the attached sheet.

_____
Complainant's signature

Luis De La Cruz, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 12/03/2015

_____
Judge's signature

Pamela J. Mathy
Printed name and title

City and state: San Antonio, Texas

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Luis De La Cruz, Special Agent, Drug Enforcement Administration (DEA), San Antonio, Texas, being duly sworn, depose and state as follows:

1. I am a Special Agent with the DEA and have been so employed by DEA for approximately 10 years. I am presently assigned to the San Antonio District Office of DEA. My present duties include the investigation of violations of federal narcotics and money laundering laws by large scale criminal organizations within the Western District of Texas.

2. In September 2015, I received information regarding the drug distribution activities of Pete OJEDA (OJEDA). A confidential source (CS) had an established relationship with OJEDA and advised Agents that he/she was able to buy distributable quantities of heroin from OJEDA.

3. On September 22, 2015, the CS, along with an Undercover Agent (UC), were able to successfully purchase 41.3 grams of heroin from OJEDA. This purchase was surveilled by law enforcement and attended by the UC with a hand to hand transfer of the narcotics. Subsequent analysis by the DEA South Central Laboratory confirmed the substance purchased was heroin.

4. On October 23, 2015, the CS, along with a UC, were able to successfully purchase 56.0 grams of heroin from OJEDA. This purchase was surveilled by law enforcement. Subsequent analysis by the DEA South Central Laboratory confirmed the substance contained heroin, and also methamphetamine, cocaine and caffeine in the substance purchased.

5. During the week of November 23, 2015, I was contacted by the CS and the CS stated OJEDA was in possession of a larger quantity of heroin. OJEDA told the CS that he could obtain heroin from his Source of Supply in order to facilitate the sale of one-half kilogram of heroin to the CS and UC. The CS told OJEDA that he was interested in the purchase of a larger amount of heroin.

6. On December 2, 2015, I was advised by the CS that the CS had been in contact with OJEDA with regards to the one-half kilogram of heroin. OJEDA informed the CS that he was in possession of approximately nine ounces of heroin, but the additional nine ounces of heroin could be obtained after 5:00 P.M. from OJEDA's Source of Supply. The CS agreed to meet with OJEDA after 5:00 P.M.

7. During the course of the investigation, I learned that OJEDA lived at 5355 San Simeon Drive, San Antonio, Texas and within the Western District of Texas. Surveillance was subsequently established on OJEDA at his address. OJEDA was observed operating a 2006 Chrysler 300 displaying Texas license plate BN9 V900 on December 2, 2015. This was the same vehicle that

OJEDA drove during the controlled purchases conducted on September 22, 2015 and October 23, 2015. On the previous occasions, OJEDA was the driver and single occupant of the 2006 Chrysler 300 displaying Texas license plate BN9 V900. Vehicle registration records checks revealed the vehicle is registered to OJEDA.

8.  The CS was in contact with OJEDA during the day. At approximately 6:40 P.M., OJEDA was observed parking the Chrysler 300 at 5355 San Simeon Drive, San Antonio, TX. OJEDA was observed wearing an orange shirt with overalls. OJEDA asked the CS to come to OJEDA's house. Agents instructed the CS to tell OJEDA that the buyer, the UC, would not go to his house. At approximately 6:45, OJEDA instructed the CS to meet him at the bakery around the corner close to his house as the meet location, and that he was ready to conduct the transaction. Minutes later, surveillance observed OJEDA and an unknown Hispanic male, later identified as Aparicio LIZARDY-Avila (LIZARDY), leave the residence of at 5355 San Simeon Drive, San Antonio, TX. LIZARDY was wearing a dark colored sweater and long shorts. LIZARDY was observed to be carrying a plastic bag containing unknown items. LIZARDY got into the Chrysler 300 with OJEDA, and they travelled together a short distance in the direction of the meet location.

9.  In route to the meeting location, LIZARDY got out of the vehicle. LIZARDY is observed by surveillance walking toward the meeting location at the bakery. After a few minutes, OJEDA was approached by law enforcement at the bakery. Two marked patrol vehicles stopped OJEDA at the bakery. At the same time, surveillance observed LIZARDY, after the marked units turn on their lights, change his direction of travel and attempt to flee the location. LIZARDY had reached a gas station next door to the bakery before turning around and fleeing the meeting location in a direction back towards the residence.

10. At that time, LIZARDY was approached by law enforcement. Law enforcement asked LIZARDY where he was coming from, and LIZARDY said he had been to the gas station. The Agents knew that LIZARDY did not go to the gas station. Law enforcement asked LIZARDY what was in the plastic bag he was carrying. LIZARDY showed the agents the grocery bag. The bag was a grocery bag with a Mexican brand chip bag inside. LIZARDY then dropped the bag, and when he did so, it made a thump. Agents knew at that point that the chip bag contained something solid and not chips. LIZARDY did not answer them what was in the bag. Agents then said they were going to pat down LIZARDY for their safety. In LIZARDY's right front pocket, LIZARDY had a loaded .380 caliber firearm. The plastic bag contained approximately 560 grams of a brown substance that field tested positive for heroin. This is an amount consistent with distribution.

11. At the meeting location, OJEDA was not found to be in possession of any additional drugs. OJEDA gave a statement that he was going to the bakery to go buy some bread. OJEDA advised law enforcement there was a pistol in the back seat of the Chrysler 300. A search of the Chrysler 300 revealed an unloaded pistol located on the right rear passenger floor area.

    Further affiant sayeth naught.

_____
Luis De La Cruz, Special Agent DEA

Sworn before me on the 3rd day of December, 2015.

_____
Honorable Pamela J. Mathy
U.S. Magistrate Judge